**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| MARRITTE FUNCHES ) | |
| ) | |
| Plaintiff, ) | 3:10-cv-00127-LRH-VPC |
| ) | |
| v. ) | |
| ) | **REPORT AND RECOMMENDATION** |
| ) | **OF U.S. MAGISTRATE JUDGE** |
| ) | |
| EK McDANIEL, ET AL. ) | |
| ) | March 7, 2011 |
| Defendants. ) | |
| ) | |

This Report and Recommendation is made to the Honorable Larry R. Hicks, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the court is plaintiff's motion for temporary restraining order and/or preliminary injunction (#10).[1] Defendants opposed (#12) and plaintiff replied (#13). The court has thoroughly reviewed the record and recommends that plaintiff's motion for temporary restraining order and/or preliminary injunction (#10) be denied.

**I. HISTORY & PROCEDURAL BACKGROUND**

Plaintiff Marritte Funches ("plaintiff") is an inmate at Northern Nevada Correctional Center ("NNCC") in the custody of the Nevada Department of Corrections ("NDOC") (#15). Plaintiff's complaint alleges violations of his First, Fourth, Fifth, Eighth, and Fourteenth Amendment rights during the time he was incarcerated at Ely State Prison ("ESP") (#8). Pursuant to 28 U.S.C. § 1915A, the court previously screened the complaint and permitted the following claims to advance: (1) retaliation in violation of the First Amendment in plaintiff's first claim for relief, (2) Eighth Amendment conditions of confinement complaint in his fourth claim for relief, and (3) Fourteenth Amendment equal protection and due process violations related to a disciplinary hearing in his fifth claim for relief (#7).

---

[1] Refers to the court's docket numbers.

1    In the first claim for relief, plaintiff alleges that defendants retaliated against him for his religious and political beliefs by depriving him of and destroying his property, and subjecting him to impermissible conditions of confinement (#8, p. 15-16). Some of the acts plaintiff addresses in his first claim for relief also comprise his Eighth Amendment conditions of confinement complaint. These acts include housing plaintiff in an empty, cold cell without any property or clothing, other than an orange jumpsuit, for thirteen days. *Id.* at 8, 16. Plaintiff further alleges that during a disciplinary hearing for a notice of charges accusing him of possessing contraband, gang materials, and for failure to follow prison rules, he was not allowed to present evidence, nor did the disciplinary officer provide plaintiff with reasoning for his findings. *Id.* at 13. Finally, plaintiff claims that the deprivation of his property without due process of law was the result of defendants' intentional discrimination against him based on his religion and political beliefs. *Id.* at 16-17.

Plaintiff filed the instant motion approximately three weeks after the court screened his complaint (#10). In his motion, plaintiff alleges that defendant Rimington has repeatedly harassed and retaliated against him by unlawfully seizing his property on numerous occasions and by forcing him to transport his property while in restraints, despite plaintiff's medical condition. *Id.* at 1-2, 6. Plaintiff claims that defendant Rimington's retaliatory confiscation of his property rendered him "unable to fully practice his religion, or to conduct his legal practice," and caused him to "live in fear of more retaliation."[2] *Id.* at 3. Plaintiff also relates encounters with defendant Rimington during which he threatened plaintiff's life, broke his property, and said that he would not stop unless plaintiff ceases filing lawsuits. *Id.* at 5-6. Plaintiff claims that he experienced "painful injuries, which he suffers from to this day," due to being required to pull his property while handcuffed and shackled. *Id.* at 6. Plaintiff requests the following injunctive relief: (1) "Return to plaintiff, all personal property taken by defendant Rick Rimington, where there has been no penological interest services, nor any legitimate security concerns," which will be determined by third party review of

---

[2] Plaintiff's complaint does not include religious rights or access to courts claims; therefore, the court declines to address such claims here. *McMichael v. Napa County*, 709 F.2d 1268, 1273 n.4 (9th Cir. 1983) (holding that a court need not consider claims that are not included in the complaint).

1  the confiscated items and will allow for the replacement of unlawfully seized items that were
2  damaged; (2) "[D]efendant McDaniel will immediately arrange for plaintiff to be transfered [sic] and
3  housed at the Nevada State Prison . . . where plaintiff will be reclassified . . . according to his current
4  point levels; and (3) "Not now, nor at any point in the future will plaintiff be forced to transport his
5  property while in restraints, nor shall he suffer any punishment for not doing so." *Id.* at 1-2.

6      Defendants oppose plaintiff's motion, stating that "[p]laintiff is trying to control the prison
7  through his injunction" (#12, p. 4). Defendants attach plaintiff's inmate issue history, which
8  indicates that NDOC officials believe they confiscated plaintiff's property pursuant to prison policy
9  (#12-2, p. 2, 9, 18-19; #12-2, p. 2). Defendants comment further that in the event plaintiff wins his
10 lawsuit, he will recover money damages for the property; therefore, he will not suffer irreparable
11 harm (#12, p. 4). Further, defendants note that plaintiff should not be permitted to control NDOC
12 by limiting its ability to search his cell[3], requiring the transfer of plaintiff, or by allowing him to
13 move freely without shackles. *Id.* at 4-6. According to plaintiff's grievance responses, NDOC has
14 not placed any medical restrictions on his movement, which would prevent him from moving his
15 own property (#12-3, p. 5). Defendants claim the injunctive relief sought by plaintiff would render
16 the prison unable to function and would "endanger the safety and security of the institution" (#12,
17 p. 6).

18     The court notes that the plaintiff is proceeding *pro se*. "In civil cases where the plaintiff
19 appears *pro se*, the court must construe the pleadings liberally and must afford plaintiff the benefit
20 of any doubt." *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988); *see*
21 *also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).
22 ///
23 ///

---

[3] The court notes that plaintiff did not request injunctive relief that would limit defendants' ability to search his cell. Rather, plaintiff requested the return of or reimbursement for his property, a facility transfer, and to be precluded from moving his property while in restraints. Therefore, defendants' briefing related to cell searches is unrelated to the instant motion.

## II.  DISCUSSION & ANALYSIS

**A.        Discussion**

    **1.        Temporary Restraining Order Legal Standard**

A temporary restraining order is available when the applicant may suffer irreparable injury before the court can hear the application for a preliminary injunction. 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2951 (3d. 1998); *see* Fed. R. Civ. P. 65(b). Requests for temporary restraining orders are governed by the same general standards that govern the issuance of a preliminary injunction. *See New Motor Vehicle Bd. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1347, n.2 (1977); *Los Angeles Unified Sch. Dist. v. United States Dist. Court*, 650 F.2d 1004, 1008 (9th Cir. 1981).

A preliminary injunction is an "extraordinary and drastic remedy" that is never awarded as of right. *Munaf v. Geren*, 553 U.S. 674, 688-90 (2008) (citations and quotation omitted). Instead, in every case, the court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter v. Natural Resources Defense Council, Inc.*, ---U.S. ---, ---, 129 S.Ct. 365, 376 (2008) (citation omitted). The instant motion requires that the court determine whether plaintiff has established the following: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Winter*, 129 S.Ct. at 374 (citations omitted).

Before *Winter*, courts in the Ninth Circuit applied an alternative "sliding-scale" test for issuing a preliminary injunction that allowed the movant to offset the weakness of a showing on one factor with the strength of another. *See Alliance for Wild Rockies v. Cottrell*, 622 F.3d. 1045, 1049-50 (9th Cir. 2010); *see also Beardslee v. Woodford*, 395 F.3d 1064, 1067 (9th Cir. 2005). In *Winter*, the Supreme Court did not directly address the continued validity of the Ninth Circuit's sliding-scale approach to preliminary injunctions. *See Winter*, 129 S.Ct. at 392 (Ginsburg, J., dissenting) ("[C]ourts have evaluated claims for equitable relief on a 'sliding scale,' sometimes awarding relief based on a lower likelihood of harm when the likelihood of success is very high . . . This Court has never rejected that formulation, and I do not believe it does so today."); *see also Alliance*, 622F.3d.

1  at 1049. In light of the *Winter* decision, however, the Ninth Circuit has indicated, "[t]o the extent
2  our cases have suggested a lesser standard, they are no longer controlling, or even viable." *Am.*
3  *Trucking Assocs. v. City of L.A.*, 559 F.3d 1046, 1052 (9th Cir. 2009). Accordingly, Plaintiff is
4  required to make a showing on all four of the preliminary injunction requirements.

5        An even more stringent standard is applied where mandatory, as opposed to prohibitory
6  preliminary relief is sought. The Ninth Circuit has noted that although the same general principles
7  inform the court's analysis, "[w]here a party seeks mandatory preliminary relief that goes well
8  beyond maintaining the status quo pendente lite, courts should be extremely cautious about issuing
9  a preliminary injunction." *Martin v. International Olympic Committee*, 740 F.2d 670, 675 (9th Cir.
10 1984). Thus, an award of mandatory preliminary relief is not to be granted unless both the facts and
11 the law clearly favor the moving party and extreme or very serious damage will result. *See Anderson*
12 *v. United States*, 612 F.2d 1112, 1115 (9th Cir. 1979). "[I]n doubtful cases" a mandatory injunction
13 will not issue. *Id*.

14       Finally, the Prison Litigation Reform Act (PLRA) mandates that prisoner litigants must
15 satisfy additional requirements when seeking preliminary injunctive relief against prison officials:

> Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity set out in paragraph (1)(B) in tailoring any preliminary relief.

20 18 U.S.C. § 3626(a)(2). Thus, Section 3626(a)(2) limits the court's power to grant preliminary
21 injunctive relief to inmates. *Gilmore v. People of the State of California*, 220 F.3d 987, 998 (9th Cir.
22 2000). "Section 3626(a) . . . operates simultaneously to restrict the equity jurisdiction of federal
23 courts and to protect the bargaining power of prison administrators-no longer may courts grant or
24 approve relief that binds prison administrators to do more than the constitutional minimum."
25 *Gilmore*, 220 F.3d at 999.

26 **B.    Analysis**

27       Plaintiff seeks a temporary restraining order mandating the return or replacement of property
28 he claims defendant Rimington wrongfully confiscated, transfer to NSP to prevent further

1  harassment and retaliation, and a prohibition on the requirement that he transport his own property
2  in shackles (#10). Defendants argue that plaintiff has not proven that he suffers a likelihood of
3  irreparable harm, and also claim that the relief he seeks is too broad and will render the NDOC
4  unable to maintain prison security (#12).

5        As an initial matter, plaintiff filed a notice of change address on January 26, 2011, alerting
6  the court and opposing counsel that NDOC transferred him to NNCC from ESP for medical
7  treatment. Given this fact, plaintiff's second request for injunctive relief, transfer from ESP to NSP
8  to avoid further harassment and retaliation, is moot. The court acknowledges that NDOC did not
9  move plaintiff to the institution he requested; however, presumably plaintiff's desire to escape the
10 alleged retaliation and harassment perpetrated by defendant Rimington is addressed by the move to
11 NNCC. Further, plaintiff does not have a constitutional right to be housed in a particular institution;
12 therefore, this request for injunctive relief would have been denied had it not been rendered moot.
13 *See Olim v. Wakinekona*, 461 U.S. 238, 245 (1983) ("[A]n inmate has no justifiable expectation that
14 he will be incarcerated in any particular prison within a State . . . .")

15 **1. Likelihood of Irreparable Harm**

16       "Our frequently reiterated standard requires plaintiffs seeking preliminary relief to
17 demonstrate that irreparable injury is likely in the absence of an injunction." *Winter*, 129 S. Ct. at
18 375. "Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent
19 with our characterization of injunctive relief as an extraordinary remedy that may only be awarded
20 upon a clear showing that the plaintiff is entitled to such relief." *Id.* (quoting *Mazurek v. Armstrong*,
21 520 U.S. 968, 972 (1997) (per curiam)). Courts generally look at the immediacy of the threatened
22 injury in determining whether to grant preliminary injunctions." *Privitera v. Cal. Bd. of Med.
23 Quality Assurance*, 926 F.2d 890, 897 (9th Cir. 1991).

24       Here, plaintiff has not demonstrated that he is in immediate danger of injury. Plaintiff
25 complains that defendants wrongfully confiscated and destroyed some of his property. The court
26 agrees with defendants that if plaintiff succeeds in proving this theory in this lawsuit, he will be
27 entitled to damages. Therefore, his injuries will be redressed and cannot be said to result in
28 irreparable harm. In fact, in the instant motion, plaintiff seeks return of or reimbursement for his

1  property.  That is precisely the outcome plaintiff can expect should he prevail in his lawsuit.
2  Plaintiff does not present any evidence to suggest that he will suffer harm if his property is not
3  returned while he awaits the outcome of this lawsuit.  Most of the items confiscated, as documented
4  by plaintiff's exhibits, describe personal items such as magazines and newspapers, CDs, personal
5  items, and pens (#10, p. 50-53).  While it may be inconvenient not to have these items during this
6  lawsuit, it does not appear that these items are irreplaceable.  On this record, the court cannot
7  determine that plaintiff will suffer irreparable harm if his property is not returned.

8        Plaintiff also states that, in the event of another transfer of cell or facility, he should be
9  precluded from moving his property while in restraints given his medical condition.  Plaintiff states
10 that he was required to move his own property while restrained despite the fact that he suffers from
11 "serious medical illness" and "heart problems" (#10, p. 6).  Defendants simply state that plaintiff
12 cannot expect to be permitted to move freely, without restraints.  However, defendants do not
13 address whether plaintiff suffers from a medical condition that should preclude him from moving
14 his own property.  Neither party attaches plaintiff's medical records; therefore, the court is unable
15 to evaluate plaintiff's medical condition to determine if plaintiff suffers risk of irreparable harm
16 related to moving his own property, shackled or not.  This information would be critical to the
17 court's determination.  Based on the record before the court, plaintiff's request for an injunction
18 precluding him from moving his own property while shackled is denied.  However, the court notes
19 that given that plaintiff was transferred to NNCC for medical treatment and evaluation, it may make
20 sense for the medical staff to determine if he is capable of moving his own property without risk to
21 his health.

22       Therefore, this factor weighs in favor of defendants' position.

23       **2.  Likelihood of Success on the Merits**

24       To obtain a preliminary injunction, plaintiff must offer evidence that there is a likelihood he
25 will succeed on the merits of his claim.  *Johnson*, 72 F.3d at 1430.  "Likelihood of success on the
26 merits" has been described as a "reasonable probability" of success.  *King v. Saddleback Junior*
27 *College Dist.*, 425 F.2d 426, 428-29 n.2 (9th Cir. 1970).  Here, plaintiff's request for injunctive relief
28 relates to the alleged retaliatory behavior of defendant Rimington; therefore, plaintiff must

demonstrate likelihood of success on his retaliation claim.[4]

### a.    First Amendment - Retaliation

"A prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). "Of fundamental import to prisoners are their First Amendment 'rights to file prison grievances . . .'" *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005) (quoting *Bruce v. Ylst*, 351 F.3d 1283, 1288 (9th Cir. 2003)). "Because purely retaliatory actions taken against a prisoner for having exercised those rights necessarily undermine those protections, such actions violate the Constitution quite apart from any underlying misconduct they are designed to shield." *Id.* "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmates exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes*, 408 F.3d at 567-68.

Here, plaintiff's complaint and motion reveal his belief that defendants retaliated against him for previous lawsuits and grievances by wrongfully confiscating and destroying his property and forcing him to transport his belongings while in shackles. Defendants state that plaintiff's property was confiscated pursuant to policy and that they cannot allow him to move around the prison without restraints. Additionally, plaintiff's inmate issue history reveals that prison officials explained to him that he does not have a medical release that would preclude him from having to transport his property while shackled, though the court cannot verify this information as plaintiff's medical records were not filed with the court. While defendants' imposition of these conditions may have

---

[4] To the extent that plaintiff's claim in the instant motion that he suffered injuries and may suffer additional harm in the future as a result of being forced to move his property while shackled raises an Eighth Amendment claim, the court will not address the likelihood of success on the merits here. The court screened plaintiff's complaint and the sole Eighth Amendment issue the court permitted to advance was the claim that defendants left plaintiff in a cell without property or clothing for thirteen days. Therefore, plaintiff's motion raises a novel legal claim, which the court will not address. *McMichael*, 709 F.2d at 1273 n.4 (holding that a court need not consider claims that are not included in the complaint). Rather, the court will consider plaintiff's claim that defendant Rimington forced him to transport his property while he was shackled as another example defendants' pattern of alleged harassment and retaliation against plaintiff.

Case 3:10-cv-00127-LRH-VPC   Document 19   Filed 03/07/11   Page 9 of 10

been in violation of plaintiff's constitutional rights, plaintiff does not demonstrate any probability of prevailing. At this point, there is a factual dispute, similar to other inmate retaliation cases, between the inmate and the prison staff about the impetus for the prison's actions against plaintiff. Plaintiff does not present any facts or argument that raise serious questions in the court's mind as to the plaintiff's likelihood of success on his claims.

Therefore, this factor weighs in favor of denying plaintiff's motion.

### 3. Balance of Hardships

The balance of hardships does not tip sharply in plaintiff's favor. Issuance of any preliminary injunctive relief would require this court to significantly interfere with the internal processes of the NDOC. Plaintiff's filing of this lawsuit will result in a determination regarding his property and plaintiff has not shown that during the pendency of this lawsuit he suffers risk of harm related to deprivation of his property. Further, movement of prisoner in a maximum-security facility involves risks to the safety and security of the institution. Given that the court must accord "substantial weight" to the effects of injunctive relief on the operation of the prison, the court finds that the balance of hardships favors the defendants. *See* 18 U.S.C. § 3626(a)(2).

### 4. Public Interest

With respect to the public interest, the court must consider the public interest in issuing the injunction against the public interest in not issuing the injunction. Here, the public is not served where the court's order would compromise the safety and security of the prison, or where resolution of the instant lawsuit will provide adequate relief to the inmate.

Therefore, plaintiff's motion for temporary restraining order is denied.

## III. CONCLUSION

Based on the foregoing and for good cause appearing, the court concludes that plaintiff has not sufficiently shown that he will suffer irreparable injury. Nor has plaintiff presented any serious questions as to the merits of his claim. As such, the court recommends that plaintiff's motion for temporary restraining order and/or preliminary injunction (#10) be **DENIED**.

The parties are advised:

1.  Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice,

1  the parties may file specific written objections to this report and recommendation within ten days
2  of receipt.  These objections should be entitled "Objections to Magistrate Judge's Report and
3  Recommendation" and should be accompanied by points and authorities for consideration by the
4  District Court.
5       2.   This report and recommendation is not an appealable order and any notice of appeal
6  pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## IV.  RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that plaintiff's motion for temporary restraining order and/or preliminary injunction (#10) be **DENIED**.

**DATED:** March 7, 2011.

_____
**UNITED STATES MAGISTRATE JUDGE**